IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| AMERICAN PATENTS LLC, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Civil Case No. 4:18-cv-00672-ALM |
| HUAWEI DEVICE USA, INC., HUAWEI DEVICE (DONGGUAN) CO., LTD., AND HUAWEI DEVICE CO., LTD., | § § § § § | |
| *Defendants*. | § | |

**DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(6)**

Defendants Huawei Device USA Inc., Huawei Device (Dongguan) Co., Ltd. (now Huawei Device Co., Ltd.), and Huawei Device Co., Ltd. (now Huawei Device (Shenzhen) Co., Ltd.) (collectively "Huawei") respectfully move to dismiss claims brought by Plaintiff American Patents LLC ("AP"). AP brought eleven complaints against various makers of cell phones, tablets, laptops, and televisions alleging infringement of patents from four families of patents that were acquired from other companies on the secondary market. The complaints, including the complaint here against Huawei, are a cut-and-paste exercise in boilerplate infringement allegations, with the allegations related to each patent family largely copied verbatim from one complaint to the next.

AP's complaint against Huawei fails to meet the *Twombly/Iqbal* pleading standards in four ways. First, as to the Maria patents,[1] the complaint fails to state a plausible claim of direct infringement under Section 271(a) because the mere sale of a device cannot, as a matter of law, directly infringe a claim to a method of using the device. The direct infringement allegations as to the Maria patents also fail because the complaint does not allege that the accused Mate

---

[1] U.S. Patent Nos. 7,373,655 and 7,934,090, which list Arturo Maria as the inventor, are collectively referred to herein as "the Maria patents."

1

smartphones, as sold by Huawei, include the features relied upon in the complaint—the Google Home application and the separate Google Chromecast device.  (Indeed, Mate smartphones as sold by Huawei do *not* include this Google app or Chromecast device.) The complaint therefore does not state a claim for direct infringement by Huawei, absent plausible joint-infringement allegations.  But the complaint also fails to allege either (1) that Huawei end users of the accused devices are in a joint enterprise or (2) that Huawei directs or controls users' downloading, purchase, and use of the features identified in the complaint (nor could it, as neither is true). Therefore, the complaint fails to plausibly allege that Huawei directly infringes the Maria patents.

     Second, as to all patents, the complaint fails to allege sufficient factual matter that, if accepted as true, would make out a plausible claim for patent infringement.  Huawei is *not* arguing that full-blown infringement contentions are necessary at this stage.  That is what P.R. 3-1 is for. Nor is Huawei suggesting that in the complaint, every last claim element must necessarily be mapped to a specific component of the accused product.  But AP's allegations are so generic that for certain claims, it is not even apparent whether the component being mapped to the claim elements is from the accused Huawei product or a third-party (Google) product or some other accessory extrinsic to the accused Huawei product.  The direct-infringement allegations as to all seven asserted patents are little more than a parroting of each limitation of the asserted claim. Such threadbare recitals do not suffice even at the pleading stage, particularly in cases that do not involve simple technology.

     Third, the complaint fails to state a plausible claim of active inducement or contributory infringement for any patent.  The complaint's allegations of indirect infringement are the epitome of boilerplate, with identical generic allegations made for all asserted patents at once and repeated from complaint to complaint.  These conclusory statements do not suffice under *Iqbal/Twombly* and should be dismissed.

Finally, the complaint's allegations of willful infringement are both implausible and unsupported. AP makes a generic accusation that Huawei has a policy of blinding itself to others' patent rights. Yet AP offers no factual allegation that would make its accusation plausible—which, tellingly, it makes verbatim against each of the defendants in its eleven cases. Far-fetched and unsupported claims like these are precisely what *Iqbal* and *Twombly* were designed to prohibit. Accordingly, Huawei respectfully requests that the Court dismiss the complaint for failure to state a claim.

### STATEMENT OF ISSUES TO BE DECIDED

1. Should the allegations of direct infringement of the Maria patents be dismissed because they fail to plausibly allege any act by Huawei that could infringe the method claims?

2. Should the infringement allegations of all seven patents be dismissed because they fail to allege sufficient factual matter that, if true, would make out a plausible claim for relief?

3. Should the allegations of indirect infringement, made jointly as to all seven patents, be dismissed because they are merely conclusory and do not suffice to state a claim under *Iqbal*?

4. Should the willful infringement allegations be dismissed as generic and implausible, for similar reasons as the indirect infringement allegations?

### I.  FACTUAL BACKGROUND

AP is a Texas limited liability company based in Tyler, Texas. Compl. ¶ 1. The defendants in the eleven complaints brought by AP in this district are electronics companies who manufacture and sell cell phones, tablets, laptops, and televisions. AP's suits against these defendants assert various combinations of four patent families, including the Mody patents,[2] which claim methods of synchronizing data transmission in a communication network, the Maria patents,

---

[2] U.S. Patent Nos. 7,088,782, 7,310,304 and 7,706,458, which list Apurva N. Mody and Gordon L. Stuber as inventors, are collectively referred to herein as "the Mody patents."

3

which claim ways of authenticating requests for shared network resources in a computer network, and the Knox patents,[3] which relate to virtual keyboard displays. The Maria patents are asserted in all eleven suits, the Mody patents are asserted in nine suits, and the Knox patents are asserted in eight suits.

The complaint in this case was filed on September 24, 2018. AP alleges that Huawei's P10 series of smartphone devices infringe the Mody patents by "includ[ing] 802.11n and/or LTE" wireless networking capabilities. Compl., D.I. 1, ¶¶ 19, 33, 45. AP alleges that Huawei's Mate series of smartphones infringe the Maria patents by "allow[ing] for initiation and/or control of Internet streamed content." Compl., at ¶¶ 57, 69. The Mate devices are also alleged to infringe the Knox patents by "includ[ing] advanced keyboard layouts including . . . predictive text and other advanced keyboard layout abilities." Compl. ¶¶ 80, 96. On October 21, 2018, Huawei Device USA, Inc. ("HDUS") moved unopposed to extend the time for it to respond to the complaint until December 27, 2018, which would align with the other defendants' deadlines. D.I. 17. The motion was granted. D.I. 18. In lieu of answering, Huawei now moves to dismiss the complaint for failure to state a claim.

## II. LEGAL STANDARDS

### A. Motions to Dismiss Under Rule 12(b)(6)

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). This means a complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. To survive a motion to dismiss for failure to state a claim, a plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* at 555.

---

[3] U.S. Patent Nos. 6,004,049 and 6,301,626, which list Paul Keith Knox as the inventor, are collectively referred to herein as "the Knox patents."

4

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 687.

### B. Direct Patent Infringement

"[W]hoever without authority makes, uses, offers to sell, or sells any patented invention . . . infringes the patent." 35 U.S.C. § 271(a). For a patented method, proof of direct infringement under § 271(a) requires that ***the defendant*** perform every step of the method. *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015). "Where more than one actor is involved in practicing the steps, a court must determine whether the acts of one are attributable to the other such that a single entity is responsible for the infringement." *Id.* The conditions for such vicarious liability are limited to "two sets of circumstances: (1) where [the defendant] directs or controls others' performance, and (2) where the actors form a joint enterprise." *Id.*

### C. Indirect Patent Infringement – Active Inducement

"Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). Liability for inducement "requires a showing that the alleged inducer [1] knew of the patent, [2] knowingly induced the infringing acts, and [3] possessed a specific intent to encourage another's infringement of the patent." *Vita–Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009); *see also Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754 (2011). "[M]ere knowledge of possible infringement" is insufficient to prove active inducement of the infringement. *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006).

### D. Indirect Patent Infringement – Contributory Infringement

"Whoever offers to sell or sells . . . a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process," is liable for contributory infringement if (1) the product "constitute[es] a material part of the invention," (2) the infringer "know[s] the same to be especially made or especially adapted for use in an infringement of such patent," and (3) the product is "not a staple article or commodity of

commerce suitable for substantial noninfringing use." 35 U.S.C. § 271(c). "To state a claim for contributory infringement, therefore, a plaintiff must, among other things, plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1337 (Fed. Cir. 2012).

### III. THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM OF DIRECT INFRINGEMENT AS TO THE MARIA PATENTS.

The Court should dismiss the Section 271(a) direct infringement claims relating to the Maria patents because, as a matter of law, sales of a device do not infringe a patented method of using the device.

The complaint alleges that Huawei has infringed "at least Claim 5 of the '655 Patent" and "at least Claim 1 of the '090 Patent." Compl. ¶¶ 58, 70. Each of these claims is directed to a method containing several steps, such as "receiving, at the network element, a request from a user to connect to the network element" and "accessing, by the user, one of the set of network resources that the network element is pre-authorized to access." '655 Patent at 6:1-2, 6:7-8. The complaint alleges that Huawei has infringed these claims "by making, having made, using, importing, providing, supplying, distributing, selling or offering for sale ***systems utilizing a method***," namely Huawei's Mate series of products. Compl. ¶¶ 59, 71 (emphasis added).

This claim fails as a matter of law. Even if the ***use*** of Huawei's devices could in some circumstances infringe the Maria patents' method claims, Huawei's sales of the device do not infringe the claims because "[m]ethod claims are only infringed when the claimed process is performed, not by the sale of an apparatus that is capable of infringing use." *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006); *see also Ericsson, Inc. v. D-Link Systems, Inc.*, 773 F.3d 1201, 1220-1222 (Fed. Cir. 2014).

That principle of law bars direct infringement liability for Huawei's sales of the accused devices. The complaint does not allege that Huawei itself performs the patented methods using the accused products. Nor does the complaint allege that purchasers of the accused products perform the steps of the patented methods in circumstances giving rise to vicarious liability for Huawei. *Cf. Akamai*, 797 F.3d at 1022 (prescribing vicarious liability "(1) where [the defendant] directs or controls others' performance, and (2) where the actors form a joint enterprise"). The complaint simply asserts that Huawei has infringed the patented method by selling devices capable of performing the method, but, as a matter of law, that cannot be.

The allegations of direct infringement of the Maria patents also fail for another independent reason: Huawei does not sell devices possessing the features depicted in the complaint. The screenshots in paragraphs 61-62 and 72-73 of the complaint depict instructions for using the Google Home application with a Google Chromecast device. The complaint does not allege that Huawei includes the Google Home application with the accused devices as sold, nor does it allege that Huawei sells the Google Chromecast device alongside the accused devices. (Indeed, AP cannot make any such allegation, because Huawei does not do either of those things. If a user wishes to use the Google Home application on a Huawei device, he or she must download and install the application after purchasing the device from Huawei. Similarly, if a user wishes to use his or her Huawei device with a Google Chromecast device, he or she must purchase a Chromecast separately, from Google or another retailer.)

The devices sold by Huawei are not capable of performing the functions depicted in the complaint without modification by the user. AP does not allege otherwise. And even if there are some Huawei users who choose to install the Google Home application, purchase a Google Chromecast, and use their Huawei device in conjunction with their Chromecast, the complaint alleges no basis for those actions to be attributed to Huawei. *Cf. Akamai*, 797 F.3d at 1022. For

7

this independent, additional reason, AP's claims of direct infringement of the Maria patents should be dismissed.

## IV. THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM OF INFRINGEMENT FOR ANY PATENT.

The Court should dismiss AP's infringement claims because they fail to articulate a plausible theory, or indeed any theory at all, of how the accused features allegedly satisfy the elements of any of the asserted claims. While P.R. 3-1 infringement contentions are not required at this stage, certain of the infringement allegations are so vague and generic that one cannot discern whether critical claim elements are being mapped to the accused Huawei product or to a Google or other product, for example. The allegations fail to state a plausible claim.

### A. The Maria Patents

The Maria patents are allegedly directed to a method of authenticating a computer's request for access to other computing resources in a network. In the claimed method, the computer wishing to access a network resource "assume[s] the identity" of another "network node" or "network element" that is "pre-authorized to access" the desired network resource, rather than having its request authenticated and authorized by the desired network resource. *See generally* U.S. Patent No. 7,373,655 at 5:30-6:10; U.S. Patent No. 7,934,090 at 4:59-5:8.

The complaint appears to allege that the claimed method is practiced when a Huawei device is used in conjunction with a Google Chromecast device, but the complaint is devoid of any factual allegations explaining how each element of the claimed methods maps onto that process. For both of the asserted Maria patents, the complaint simply recites elements of the asserted claims and states that "[t]he methods practiced by the accused products include" each element. Compl. ¶¶ 59-63, 71-74. For example, the complaint alleges that "[t]he methods practiced by the accused products include arranging *a network element* in a network, the network element being pre-authorized to access a set of *network resources*," parroting the language of the claim. *Compare*

Compl. ¶ 60 *with* U.S. Patent No. 7,373,655 ("the '655 Patent") at 5:31-33. Beyond simply reciting the claim language, the complaint makes no attempt to match the component pieces of the claim to elements of the accused products.

The result is that the complaint does not even identify, for example, what device is alleged to correspond to the "*network element*." From the allegations in the complaint, one cannot determine whether it is the accused Huawei device, a Google Chromecast, or something else that is performing each step in the asserted method claim. Similarly, the complaint fails to identify what aspects of the accused devices correspond to the claimed "network resources" that the network element is preauthorized to access. The remaining elements of the asserted claims receive similar treatment in the complaint.

The only allegations in the complaint that do not simply parrot back the language of the asserted claims are a pair of screenshots from Google websites describing Google's Chromecast product and how to use it with devices running the Android operating system. *See* Compl. ¶¶ 61, 62, 72, 73. But these screenshots do not add sufficient factual matter to make out a plausible claim for relief. Even if what is depicted in the screenshots is assumed to be true, the complaint does not show their relevance, if any. The complaint fails to identify (1) how these images relate to the accused devices, (2) what claim elements are alleged to be depicted in the screenshots, which are allegedly performed by the accused devices as opposed to the Google Chromecast device (a separate device that is made by a third party and not part of the accused devices), or (3) how information in the screenshots allegedly corresponds to the various elements of the claimed methods. Simply put, by merely parroting claim language and inserting unexplained screenshots, the complaint fails to provide any statement "*showing* that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2) (emphasis added).

This case is not like *Disc Disease Solutions Inc. v. VGH Solutions, Inc.*, in which the Federal Circuit found it sufficient for the plaintiff's complaint to allege generally that the defendant's products met each and every element of the claims. 888 F.3d 1256, 1260 (Fed. Cir. 2018). There, the case "involve[d] a simple technology," an inflatable spinal brace. *Id.* at 1257-58, 1260. The language of the claims was directed to visible, physical components of the accused device. *See id.* at 1257-58. Thus, the court concluded that it was enough to list the patents, identify the accused devices, and "attach[] photos of the product packaging as exhibit," as that was "enough to provide [the defendant] fair notice of infringement." *Id.* at 1260.

Here, by contrast, the claims are directed to a method of authenticating requests for shared network resources in a computer network. Far from being a "simple technology," carrying out the claimed authentication process would involve complicated electronics and communications protocols. Unlike *Disc Disease*, where a photo was sufficient because the claims were directed to visually identifiable components, here the claimed elements—"network element," "network resources," etc.—cannot be seen or otherwise readily identified simply by knowing what product is accused. Therefore, the allegations in AP's complaint fail to give "fair notice of infringement." *Id.*; *cf. Genedics, LLC v. Meta Co.*, No. CV 17-1062-CJB, 2018 WL 3991474, at *12 n.15 (D. Del. Aug. 21, 2018) ("There can be little doubt, however, that the patents at issue here concern subject matter that is much more technologically sophisticated than in *Disc Disease*. And so the Court will look to the factual allegations in the body of the Complaint to help discern whether plausible claims of infringement have been set out.").

In sum, AP's boilerplate allegations are insufficient to make out a plausible claim of patent infringement. The complaint simply states that the accused products contain each element of the claims with no factual support for those one-size-fits-all conclusions. Because such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice" to state a plausible claim for relief, the complaint's allegations regarding the Maria patents should be dismissed. *Iqbal*, 556 U.S. at 687.

      **B.**      **The Knox Patents**

A similar defect characterizes AP's claims of infringement related to the Knox patents. The Knox patents relate to a method of configuring an input device such as a keyboard. The method involves, among other things, selecting a layout for the input device, determining whether the input layout is currently displayed, retrieving the layout from another location if necessary, and displaying the layout on "display elements corresponding to the input device layout." *See generally* U.S. Patent No. 6,004,049 at 8:30-44 (claim 1), 9:12-25 (claim 10); U.S. Patent No. 6,301,626 at 8:41-54 (claim 1), 9:21-34 (claim 8).

The complaint's allegations regarding the Knox patents primarily consist of boilerplate statements alleging that the claimed methods are "performed by the accused products" and that "the accused products" include each element of the patented claims. *E.g.*, Compl. ¶¶ 99 ("The methods performed by the accused products include selecting an input device layout."), 102 ("The accused products include means for identifying an input device layout."). The complaint makes no attempt to provide specific factual allegations or support for those conclusory statements. The '049 patent, for example, includes a step of "determining a location of the selected input device layout when it is determined that the selected input device layout is not displayed." '049 Patent at 8:38-40. But the complaint identifies neither what "input device layout" is "not displayed," nor what allegedly constitutes "determining [the] location" of the input device layout that is not displayed. Similarly, the '626 patent includes an additional requirement of "downloading the identified input device layout over the network from a server having a plurality of input device layouts." '626 Patent at 8:50-52. Yet nowhere does the complaint identify what input device

layouts the accused devices allegedly download, or from whose server they are downloaded. Huawei is instead left to guess about every claim element.

The three screenshots included in the complaint add no substance or support to the conclusory allegations contained in the boilerplate text. *See, e.g.*, Compl. ¶¶ 83, 87, 89, 90. The screenshots are presented entirely without explanation, with nothing to link any features or objects depicted in the screenshots to the elements of the patents' claims. Absent explanation, the screenshots do not remedy any of the deficiencies noted above.

In sum, the complaint wholly fails to identify any of the claims' elements in the accused product or to articulate a theory of how the elements of the patent claims are met. AP's claims of infringement of the Knox patents should be dismissed for failure to state a claim.

### C. The Mody Patents

AP adopts the same pleading strategy with the Mody patents. These patents relate to methods of synchronizing data transmission in a communication network. The method involves, among other things, "producing a frame of data comprising a training symbol that includes a synchronization component," "transmitting the frame," "receiving the transmitted frame," and "synchronizing the received demodulated frame to the transmitted frame such that the data symbols are synchronized in the time domain and frequency domain," wherein "the synchronizing in the time domain comprises coarse time synchronizing and fine time synchronizing." *See generally* U.S. Patent No. 7,088,782 at 22:32-48 (claim 30); U.S. Patent No. 7,310,304 at 18:2-26 (claim 1); U.S. Patent No. 7,706,458 at 18:49–19:18 (claim 1).

The technology of the Mody patents is not so simple that it can be demonstrated with a couple of unexplained screenshots and a recitation of the claim elements. *See Genedics*, 2018 WL 3991474, at *12 n.15 (looking to factual allegations in the complaint for plausibility where the patents "concern subject matter that is much more technologically sophisticated than in *Disc*

*Disease*"). Yet again, that is all AP's complaint offers. *See, e.g.*, Compl. ¶¶ 19-27. And while it seems apparent that the device "transmitting the frame" would not be the same device "receiving the transmitted frame," the complaint does not address which of these roles, if either, the accused Huawei device is playing in AP's undisclosed infringement theory. Instead, the complaint merely parrots the claim elements generically, alleging that the "methods practiced by the accused products include transmitting the frame" and the "methods practiced by the accused products include receiving the transmitted frame." Compl. ¶¶ 23-24.

So again, the complaint lacks any statement "showing" that AP is entitled to relief. Because the technology in all seven asserted patents is not so simple that infringement can be shown by simply holding up a picture of the accused product next to the claim elements, the complaint would have had to provide at least a basic explanation of its infringement basis, if any, and it would have had to indicate what claim elements map to the accused product versus some other product. AP's complaint, however, does not, and it fails the test of *Twombly* and *Iqbal*.

## V. THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM OF INDIRECT PATENT INFRINGEMENT FOR ANY PATENT.

### A. THE INDIRECT INFRINGEMENT CLAIMS SHOULD BE DISMISSED ENTIRELY.

The indirect infringement allegations should be dismissed because of the failure of the underlying direct infringement claims. Separate from direct infringement, however, the indirect infringement allegations should be dismissed for the additional reason that they are so threadbare and generic—adapted to be cut and paste into any patent infringement complaint, no matter the defendant or the circumstances—as to be practically meaningless. *See Iqbal*, 556 U.S. at 687.

All of the allegations regarding induced infringement for **all** of the asserted patents are contained in two paragraphs. The first alleges that Huawei has induced "the end-users, Huawei's customers," to directly infringe the asserted patents "by using the accused products" because

Huawei "took active steps . . . with the specific intent to cause [its users] to use the accused products in a manner that infringes one or more claims of the patents-in-suit." Compl. ¶ 110. According to the complaint, "[s]uch steps by Huawei included, among other things, advising or directing customers and end-users to use the accused products in an infringing manner; advertising and promoting the use of the accused products in an infringing manner; and/or distributing instructions that guide users to use the accused products in an infringing manner." *Id.*

This first paragraph fails to meet the requisite pleading standards. In attempting to state a claim for active inducement, the paragraph generically recites factors that could lead to a finding of inducement—"advising or directing customers," "advertising and promoting," etc.— with respect to all of the asserted patents (which claim very different features), without providing any support for the conclusory statements, such as by identifying specific examples or actions taken by Huawei to advertise, direct, or instruct users to use the accused products "in an infringing manner." *See id.* AP's conclusory statements are even made in the alternative, so that it is impossible to know which, if any, of the factors supposedly apply to Huawei. *See id.* ("[S]teps by Huawei included . . . advising or directing customers and end-users . . . advertising and promoting the use . . . *and/or* distributing instructions . . . .") (emphasis added). The very same statements could be made about any claim of active inducement in any case.

The second paragraph of allegations regarding active inducement fares no better. That paragraph alleges that Huawei has induced "its affiliates, *or* third-party manufacturers, shippers, distributors, retailers, *or* other persons acting on its or its affiliates' behalf . . . by importing, selling or offering to sell the accused products." Compl. ¶ 111 (emphasis added). Like the first paragraph, the remainder of the second paragraph recites conclusory allegations of factors that may establish inducement liability, but the allegations are generic to all asserted patents, adapted to be cut-and-pasted into any patent infringement complaint. *Id.*

Neither paragraph regarding active inducement ties any specific activities undertaken by Huawei to third-party uses of the accused devices that allegedly infringe the patents. Nor are there allegations found elsewhere in the complaint, such as the complaint's allegations regarding direct infringement, that provide the requisite detail to render American Patent's indirect infringement allegations plausible. For example, with regard to alleged direct infringement of the Maria patents, the complaint includes two screenshots depicting instructions for using the Google Home application to set up a Google Chromecast device and a general advertisement for the features of Chromecast. Compl. ¶¶ 61, 62, 72, 73. Even if these screenshots advertise or instruct users on infringing conduct, they are taken from *Google* websites, not from Huawei's website or other materials. Google's website materials are not statements of, nor actions by Huawei to advertise or instruct users. Similarly, for the Knox patents, the complaint's direct infringement allegations include screenshots from third-party websites describing features of the virtual keyboard in Google's Android operating system. Compl. ¶ 83, 87, 89, 90, 99, 100, 102, 105. These screenshots cannot support a claim that *Huawei* has actively induced infringement of the patents.

The contributory infringement allegations, contained in a single paragraph purporting to apply to all seven patents, are similarly conclusory. The complaint contains no specific factual allegations for the asserted patents other than reciting the accused features and parroting the legal standard, that those features allegedly "constitute a material part of the invention of one or more of the [asserted] claims . . . and are not staple articles of commerce suitable for substantial non-infringing use."[4] Compl. ¶ 112. The accused features themselves are defined in generic, circular

---

[4] While the complaint alleges that the "special features" constitute a material part of the invention and are not staple articles of commerce, the question is not whether the *special features* meet those requirements but whether the accused devices as a whole meet those requirements. Section 271(c) prohibits sales of "a *component* of a patented machine, manufacture, combination or composition, or a *material or apparatus* for use in practicing a patented process." 35 U.S.C. 271(c). Because Huawei sells the accused products as complete devices, rather than selling the accused features individually, the question for Huawei's potential liability is whether the entire device it sells

terms—for example, as to the Maria patents, "initiation and/or control of Internet streamed content . . . in a manner that infringes" the asserted patents.  Compl. ¶ 112; *see also id.* (defining the "special features" for the Knox patents as "advanced keyboard layout capabilities in a manner that infringes" the accused patents).  Defining the allegedly infringing component as "features that infringe" does not give fair notice of what the allegedly infringing component is.[5]

The generic nature of the indirect infringement allegations (both induced and contributory infringement) is further demonstrated by the fact that they are copied verbatim in each of the eleven complaints AP filed with the Court.  The only differences among the complaints are that the defendants' names and the asserted patent numbers have been changed and that in one of the complaints, *American Patents LLC v. Hisense Co., Ltd.*, Civ. No. 4:18-768, the indirect infringement allegations are stated twice (inadvertently, it seems) for three of the asserted patents.

In sum, given that the complaint contains only "[t]hreadbare recitals" regarding active inducement and contributory infringement with no factual matter to support it, the indirect infringement allegations should be dismissed for failure to state a claim.

**B. AT A MINIMUM, THE INDIRECT INFRINGEMENT CLAIMS SHOULD BE DISMISSED AS TO PRE-SUIT CONDUCT.**

Although the complaint's allegations of indirect infringement should be dismissed in their entirety for the reasons discussed above, they also should be dismissed as to conduct occurring prior to the filing of the complaint for the additional reason that, with one exception, the complaint

---

"constitut[es] a material part of the invention" and is "not a staple article or commodity of commerce suitable for substantial noninfringing use."  *Id.*

[5] The definition is also circular: The allegedly infringing component is identified and defined by the fact that it infringes the patents. This defies the logic of the statute. If an allegedly infringing component could be defined by the fact of its infringement, there would be no purpose to the statute's third element, which is that the component is "not a staple article or commodity of commerce *suitable for substantial noninfringing use*."  § 271(c).

fails to allege that Huawei had knowledge of the asserted patents prior to the filing of the complaint.

Active inducement and contributory infringement both require that the defendant have knowledge of the asserted patent, so a complaint must contain sufficient factual allegations to permit an inference that the defendant had such knowledge. *Babbage Holdings, LLC v. Activision Blizzard, Inc.*, Civ. No. 2:13-750-JRG, 2014 WL 2115616 (E.D. Tex. May 15, 2014), at *2. The complaint here does not allege that Huawei had knowledge of any patents except the Mody '458 patent prior to the filing of this suit. To the contrary, the complaint alleges that Huawei has had knowledge "at least as of the date when it was notified of the filing of this action." *See* Compl. ¶¶ 28, 40, 64, 75, 91, 107; *but see* Compl. ¶ 52. Thus, apart from the Mody '458 patent, the complaint includes no allegations to support a claim of indirect infringement prior to the filing of this suit.

To the extent that AP seeks to rely on a theory of willful blindness, its allegations are not plausible. The complaint alleges that Huawei "has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of AP's patent rights." Compl. ¶ 113. This accusation, however, is merely the same canned accusation that AP makes against all defendants in all 11 complaints. AP offers no factual basis for the accusation against Huawei—not a policy, a memo, an email, or even a rumor. AP's fabricated conspiracy of willful blindness is precisely the type of implausible, generic, unsupported allegation that the Supreme Court rejected in *Twombly* and *Iqbal*.

Without any allegations supporting the requirement that Huawei had knowledge of the asserted patents prior to the current suit, AP's allegations of indirect infringement are not plausible and should be dismissed for this additional and independent reason.

## VI. THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM OF WILLFUL INFRINGEMENT FOR ANY PATENT.

Finally, AP's claim of willful infringement should be dismissed because the underlying infringement claims are insufficient, but also because the complaint fails to make out a plausible claim of willfulness. Enhanced damages for willful infringement are "generally reserved for egregious cases of culpable behavior." *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923, 1932 (2016). As a result, general and formulaic assertions of willful infringement are insufficient at the pleading stage. *See, e.g.*, *Varian Medical Systems, Inc. v. Elekta AB*, C.A. No. 15-871-LPS, 2016 WL 3748772, at *8 (D. Del. July 12, 2016).

The complaint alleges that Huawei's infringement "is, has been, and continues to be willful, intentional, deliberate, and/or in conscious disregard of AP's rights under the patents." Compl. ¶ 115. But the complaint pleads no factual matter to support this conclusory statement. While "subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages," *Halo*, 136 S. Ct. 1932-33, the complaint does not allege that Huawei had knowledge of any of the patents prior to the filing of this suit other than the Mody '458 patent, as noted above. *See supra* Part III.B. Without any allegations that Huawei had knowledge of the asserted patents prior to the current suit, AP's allegation that Huawei's infringement "has been . . . willful, intentional, deliberate, and/or in conscious disregard of AP's rights under the patents" is not plausible.

Only two other allegations in the complaint appear to relate to willful infringement. The first is the conclusory allegation that "Huawei's actions are at least objectively reckless as to the risk of infringing valid patents and this objective risk was either known or should have been known by Huawei." Compl. ¶ 114. No specific "objectively reckless" actions, however, are alleged in the complaint. Such conclusory assertions are not entitled to the presumption of truth at the pleading stage. *Iqbal*, 556 U.S. at 681.

18

The second allegation that appears to relate to willfulness is the allegation that Huawei "has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of American Patents' patent rights."  Compl. ¶ 113.  As explained above in Part III.B, this allegation is unsupported and implausible.  It cannot support a claim depending on Huawei's having knowledge of the patents prior to suit.  Accordingly, the willful infringement claims should be dismissed for failure to state a claim.

## CONCLUSION

For the reasons stated herein, the complaint should be dismissed.

Dated: December 27, 2018

/s/ *Scott W. Breedlove*
E. Leon Carter
Texas Bar No. 03914300
lcarter@carterarnett.com
Scott W. Breedlove
Texas Bar No. 00790361
sbreedlove@carterarnett.com
Laura Maninger
Texas Bar No. 24106245
lmaninger@carterarnett.com
CARTER ARNETT, PLLC
8150 N. Central Expressway, Suite 500
Dallas, Texas 75206
Telephone: No.: (214) 550-8188
Facsimile No.: (214) 550-8185

**Attorneys for Defendants HUAWEI DEVICE USA, INC., HUAWEI DEVICE (SHENZHEN) CO., LTD., AND HUAWEI DEVICE CO., LTD.**