IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| AMERICAN PATENTS LLC, | § | |
| | § | |
| *Plaintiff*, | § | Civil Case No. 4:18-cv-00672-ALM |
| | § | |
| v. | § | |
| | § | |
| HUAWEI DEVICE USA, INC., HUAWEI | § | |
| DEVICE (DONGGUAN) CO., LTD., AND | § | |
| HUAWEI DEVICE CO., LTD., | § | |
| | § | |
| *Defendants*. | | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION
TO DISMISS UNDER RULE 12(b)(6)**

American Patents LLC's ("AP") complaint fails to state a claim upon which relief can be granted because it fails to "show[] that the pleader is entitled to relief" as Rule 8(a)(2) requires.  In its opposition to Huawei's motion, AP hides behind the discussion in *Disc Disease* concerning "a simple technology."  Yet just last month, Chief Judge Gilstrap, in the *Chapterhouse* case discussed below, found "*Disc Disease* to be inapposite" where "more complicated patents" are involved. Although AP labels its complaint's allegations specific and plausible, the actual language in the complaint is no more than generic boilerplate—recycled from one case to the next, one defendant to the next, and one product to the next.  The allegations lack factual matter that, taken as true, show the pleader is entitled to relief from Huawei for direct, indirect, or willful infringement.

**I.     THE COMPLAINT FAILS TO STATE A CLAIM FOR DIRECT INFRINGEMENT
OF THE MARIA PATENTS.**

AP's defense of its Maria patent allegations starts with a confusing discussion of the accused products.  As Huawei's motion explained, it cannot directly infringe the Maria patents as alleged because it does not sell devices with the components depicted in the complaint: the Google Home application and the Google Chromecast device.  Mot. at 7-8.  AP does not contest this fact,

instead arguing that its claims should go forward "because Huawei *does* sell the devices that [AP] *did* accuse, the Huawei Mate 10."  Opp. at 7.  But Google Home and Google Chromecast features are the only features depicted in the complaint's recitation of claim elements.  *See* Compl. ¶¶ 61, 72.  AP's complaint lacks any plausible basis for alleging that Huawei directly infringes by selling its Mate 10 devices without Google Home or Chromecast.[1]

A similar scenario was considered last month in *Chapterhouse, LLC v. Shopify, Inc.*, No. 2:18-cv-00300-JRG, 2018 WL 6981828 (E.D. Tex. Dec. 11, 2018).  There, the direct infringement allegations were "premised on integrating an application called 'Spently' with the Shopify system" sold by the defendant.  *Id.* at *3 (internal quotation marks omitted).  Chief Judge Gilstrap dismissed these claims because there was no allegation that the defendant "owns or controls the Spently app," such that the defendant could be held responsible if the app performed certain claim steps.  *Id.*  So too here.  AP's complaint lacks allegations supporting the notion that Huawei could be liable for an app (Google Home) and device (Chromecast) it does not sell.

AP's complaint fails to plausibly allege direct infringement of the Maria patents for the additional reason that sales of a device do not infringe a patented method of using the device.  *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 131 (Fed. Cir. 2006).  AP does not dispute that device sales cannot infringe a patented method of use (*see* Opp. 6-8); instead, it ignores the point.  AP's infringement-by-selling theory fails as a matter of law and should be dismissed "with no opportunity to replead*.*"  *Round Rock Research, LLC v. Oracle Corp.*, No. 4:11-cv-332-ALM, 2011 WL 11761563, at *4-5 (E.D. Tex. Oct. 25, 2011) (Mazzant, J.).

_____

[1] AP asserts that Huawei's devices "run on the Android operating system, which is specifically designed to work with and stream to Google Chromecast devices . . . whether or not the Google Home application is installed."  Opp. at 7.  But the complaint specifically relies on instructions for the Google Home application as proof of infringement.  Compl. ¶¶ 61, 72.  AP has not—and cannot—allege that Huawei installs the Google Home application on the accused Huawei devices.  Thus, AP's complaint fails to state a plausible claim for direct patent infringement.

Because it cannot defend the theory of infringement pled in the complaint, AP now tries to pivot and argue that Huawei directly infringes by *using* its own products (presumably in the U.S.). Opp. at 7-8.  But the complaint lacks support for such a claim as there are *no* factual allegations regarding Huawei's purported use—no who, what, where, when, or how.  The website citations and screenshots in the complaint do not suggest Huawei uses the devices to perform the steps of the patented method; at best, they show that Huawei sells devices in the U.S. and that third party Google offers separate products that can be used to stream video between devices.  *See* Mot. at 7. The only possible support for a claim of use is the generic allegation that Huawei has infringed "by making, having made, using, importing, providing, supplying, distributing, selling, or offering for sale systems utilizing a method."  Compl. ¶¶ 59, 71.  Such bare conclusions need not be taken as true at the pleading stage, *see Iqbal*, 556 U.S. at 678, and there is no other factual matter in the complaint to meet the standard of *Iqbal/Twombly*.

AP's lone case, *CreAgri, Inc. v. Pinnaclife, Inc.*, 2013 WL 11569 (N.D. Cal. 2013), cannot save the complaint.  There, the court found the complaint sufficient because it "precisely track[ed] the language of Form 18," which provided an "exception to the specificity requirements of *Twombly* and *Iqbal*."  *Id.* at *2.  But Form 18 was abrogated by the Supreme Court in 2015 and no longer controls.  *See* Fed. R. Civ. P. historical note, appendix of forms.[2]  Thus, claims of direct infringement are no longer even arguably excepted from the specificity requirements of *Twombly*

---

[2] "Many of the forms are out of date. The sample complaints, for example, embrace far fewer causes of action than now exist in federal court and illustrate a simplicity of pleading that has not been used in many years. The increased use of Rule 12(b)(6) motions to dismiss, the enhanced pleading requirements of Rule 9 and some federal statutes, the proliferation of statutory and other causes of action, and the increased complexity of most modern cases have resulted in a detailed level of pleading that is far beyond that illustrated in the forms."  6-14-2014 Memo from Judge Campbell to Judge Sutton regarding then-proposed amendments to the Federal Rules of Civil Procedure, available at www.uscourts.gov/sites/default/files/fr_import/ST09-2014.pdf.

and *Iqbal*.  *See Disc Disease Solutions, Inc. v. VHG Solutions, Inc.*, 888 F.3d 1256, 1259-60 & n.3 (Fed. Cir. 2018).  *CreAgri* is a dead letter.

AP also tries to save its direct infringement claims by arguing that its complaint was not limited to the Maria patents' method claims.  Opp. at 8.  But there is no mention of the Maria patents' "multiple apparatus claims," Opp. at 8, anywhere in the complaint.  AP chose to plead alleged facts only as to claim 5 of the Maria '655 patent and claim 1 of the Maria '090 patent, both of which are method claims, and it must be held to that choice.[3]  If AP cannot support a claim of infringement as to the only claims it pled, there is nothing left to support a claim of infringement.  And the claim for direct infringement of the Maria patents should be dismissed.

## II.   THE COMPLAINT FAILS TO STATE A CLAIM FOR INFRINGEMENT OF ANY PATENT.

In addition to the particular problems affecting the Maria patents, AP's complaint fails to state a plausible case for infringement of any patent because the complaint's boilerplate allegations consist of parroted claim language and do not convey a theory of infringement tying accused Huawei devices to even one element of the asserted claims.

AP defends its defective pleading by attacking a straw man: "It seems that nothing short of element-by-element infringement contentions *actually proving* infringement would be enough to satisfy Huawei at the pleadings stage." Opp. at 3.  To the contrary, Huawei's motion does not seek to require AP to prove its claims at the pleading stage; instead, it seeks simply to hold AP to the minimum pleading standard enforced just last month by Chief Judge Gilstrap in *Chapterhouse*.

---

[3] AP presumably chose the method claims because it believes they were most likely to be infringed. Huawei cannot tell how it is alleged to infringe those claims, but it is clear that AP has no case as to the other claims of the patents.  The Maria '655 patent has only one set of non-method claims, which are directed to a "network element" having "a port to couple the network element to a user" and "a port to couple the network element to a network resource"—features clearly lacking in the accused devices.  USPN 7,373,655 at 6:17-27.  The Maria '090 patent has two sets of non-method claims, one for a "computer system" comprising multiple devices and the other a "computer program product," neither of which is sold by Huawei.  USPN 7,934,090, at 5:45-67, 6:44-60.

4

In that case, plaintiff identified a specific patent claim and a specific product, and it broke down "the exemplary claim into individual elements with 'supporting' screenshots."  2018 WL 6981828 at *2.  Like AP's complaint, the *Chapterhouse* complaint addressed each claim element, parroting the claim language, stating that the accused product had the element, and referring to exemplary screenshots, with no further explanation about the relationship between the screenshots and the element.  *Id.*  The plaintiff argued that this was more than enough, "as the Federal Circuit has now made clear in *Disc Disease*."  *Id.*  Chief Judge Gilstrap, however, found *Disc Disease* "inapposite":

> Contrary to the relatively simple patents of *Disc Disease*, the four patents and 13 independent claims here cover the hardware and software involved in an electronic transaction receipt system that allows digital receipts to be generated from information electronically read from the product and provides additional purchase opportunities to customers. Accordingly, the Court finds that there are both more claims and more complicated patents than those at issue in *Disc Disease*.

*Id.*  The court concluded that simply parroting a claim element and providing screenshots "is a mere conclusory statement," and "accompanying factual allegations" were required:

> While screenshots may be useful in laying out a plausible allegation of patent infringement, Plaintiff must further allege how the screenshots meet the text of the exemplary claim in order to lay out sufficient factual allegations which might permit the Court to find that the *Iqbal/Twombly* standard is met.

*Id.*[4]  Likewise here, because the complaint does nothing more than parrot claim limitations and paste unexplained excerpts from webpages belonging to Huawei, ETSI, and Google, the Court should dismiss the direct infringement claims.  This result is particularly necessary and appropriate in light of allegations in AP's complaint indicating that Google products, not offered for sale by

---

[4] AP relies on *Dynocom Industries, Inc. v. Mainline Automotive Equipment Pty. Ltd.*, No. 2:16-cv-00553-JRG-RSP, 2017 WL 1109893, at *2 (E.D. Tex. Feb. 14, 2017).  But *Dynocom* predated the Federal Circuit's implied guidance in *Disc Disease* that such bare-bones allegations would not be appropriate in cases involving more complicated technology.  The technology in *Dynocom* was mechanical and relatively simple, involving "a hub coupling, drive shaft, and load shaft."  *Id.*  And the complaint there, unlike AP's, did not plead that a third party's product was involved in the alleged infringement.

Huawei, are required to satisfy one or more claim elements.  Even now, after Huawei's motion identified specific defects in the infringement allegations, AP fails to explain how the elements of the claims could plausibly be met by Huawei.

With respect to the Maria patents, for example, the complaint names Huawei's Mate smartphones as the accused product but relies exclusively on depictions of the third-party Google Home application and Chromecast device to argue that the smartphones infringe.  Huawei is unable to ascertain whether the accused device is Huawei's Mate device, the combination of a Mate device with the Google Home application and a Chromecast, or something else. The answer matters because Huawei does not make, use, sell, import, or offer to sell Mate devices in combination with Google Home or Chromecast.

## III.     THE COMPLAINT FAILS TO STATE A CLAIM FOR INDIRECT INFRINGEMENT.

Because indirect infringement requires underlying direct infringement, and because AP has failed to make out a plausible case for direct infringement of any patent ***by anyone***, AP's indirect infringement claims fall with its implausible direct infringement allegations.  *Lochner Techs., LLC v. AT Labs Inc.*, No. 2:11-cv-242-JRG, 2012 WL 2595288, at *2 (E.D. Tex. July 5, 2012) ("[B]ecause liability for indirect infringement of a patent requires direct infringement, the amended complaint must plausibly allege that the asserted patent was directly infringed to survive a motion to dismiss," citing *In Re Bill of Lading Transmission and Processing Sys. Patent Litig.*, 681 F.3d 1323, 1333 (Fed. Cir. 2012)).  But AP's indirect infringement claims are deficient also because other inducement and contributory infringement elements likewise miss the mark, notwithstanding AP's suggestion that boilerplate pleading is adequate.

### A.     Active Inducement

Huawei's motion established that AP's inducement claims are deficient because they are "so threadbare and generic . . . as to be practically meaningless."  Mot. at 13.  The allegations are

made generically as to all asserted patents, without any reference to specific actions taken by Huawei, and are repeated nearly verbatim in each of AP's 11 complaints.  Mot. at 13-15.  AP claims that its complaint is sufficient because it "specifically pleaded that Huawei committed acts of inducing infringement, including, for example, 'distributing instructions that guide users to use the products in an infringing matter [*sic*: manner].'"  Opp. at 9 (quoting Compl. ¶ 110).  But AP ignores the fact that its complaint contains no factual support for that conclusory infringement allegation.  As Huawei's motion pointed out, the only instructional materials referenced in the complaint were published by third parties such as Google.  Mot. at 15 (citing Compl. ¶¶ 61, 62, 72, 73, 83, 87, 89, 90, 99, 100, 102, 105).  Those materials cannot establish that *Huawei* took active steps to induce infringement.  AP offers no response to this point.

AP's citation to *Cywee Group Ltd. v. Huawei Device Co.*, 2018 WL 3819392, at *2 (E.D. Tex. 2018) is unavailing.  The *Cywee* court declined to dismiss claims of indirect infringement based on the allegation that Huawei "provides manuals and instructions . . . and/or provides instructional and support materials on its website that teach and instruct its customers to operate [the accused] products in ways that practice the claimed invention."  *Id.* (quoting complaint).  But the *Cywee* complaint, unlike this one, illustrated the allegations by "describ[ing] three user manuals that teach allegedly infringing behavior, *and attach[ing] each to the third amended complaint*."  *Id.* at *4 (emphasis added).  Here, AP's complaint lacks any such factual detail—there are no quotations, screenshots, descriptions, or copies of manuals from Huawei that could constitute instructions to a user to perform steps corresponding to a claimed method.  AP's inducement claims are completely lacking in Huawei-specific support and are not plausible.

## B.    Contributory Infringement

AP's contributory infringement allegations suffer similar deficiencies.  Made in a single, generic paragraph for all of the asserted patents, AP's contributory infringement allegations simply

recite the accused features and parrot the legal standard.  *See* Mot. at 15-16.  AP contends these

boilerplate allegations are sufficient because it "specifically pleaded that the accused products have

special features that have no substantial use other than uses that infringe [AP's] patents."  Opp. at

10.  But again, these "special features" are defined in generic, circular terms that fail to provide

fair notice of what is alleged to infringe.  Mot. at 15-16; *see also* 35 U.S.C. § 271(c) (referring to

"a component" of a patented item that is not suitable for substantial noninfringing use).  For

example, as to the Maria patents, AP alleges that Huawei's devices feature "initiation and/or

control of Internet streamed content."  Compl. ¶ 112.  But again, the only features relating to

"initiation and/or control of Internet streamed content" referenced in the complaint are features of

the Google Home application and Chromecast device, neither of which is a component of

Huawei's accused products.  The contributory infringement allegations should be dismissed.

### C.      Pre-Suit Allegations and Willful Blindness

AP's allegations of indirect infringement as to pre-suit conduct suffer from an additional

fatal flaw: the complaint fails to plausibly allege "that Huawei had knowledge of any patents

except the Mody '458 patent prior to the filing of this suit."  Mot. at 17.  AP argues its pre-suit

claims are supported by its "alleg[ation] that Huawei was willfully blind to the existence of the

asserted patents before the suit was filed."  Opp. at 11.  This allegation is neither plausible nor

sufficient to support a claim of pre-suit indirect infringement.

First, the canned nature of AP's allegation—repeated verbatim in 10 other complaints—

confirms that AP has no factual basis for its allegation.  AP does not cite to even a single comment

associated with Huawei to support its claim.  Instead, AP's purported support is that Professor

Mark Lemley said in a law review article that "[v]irtually everyone does it."  Opp. at 11-12; *see*

*also* Opp. at 12 n.3.  As fine a scholar as Professor Lemley may be, his unsworn opinion writings

about the culture of technology companies does not support a claim that ***Huawei*** blinded itself to

the existence of **these patents**.  If Professor Lemley's say-so were enough, and if the evidence did

not need to relate in some way to the specific patents at issue, then any claim of indirect

infringement (or willfulness) against a technology company would survive *Iqbal/Twombly* review.

That cannot be.  *Iqbal* and *Twombly* require factual allegations, not industry gossip.

Second, as AP acknowledges, courts in this district have properly concluded that a

company's dislike of patents generally does not meet the willful blindness standard articulated by

the Supreme Court in *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 770 (2011).  *See*

Opp. at 12 (citing *Nonend Inventions, N.V. v. Apple, Inc.*, 2016 WL 1253740, at *2-3 (E.D. Tex.

2016)).  The Supreme Court explained that "a willfully blind defendant is one who takes deliberate

actions to avoid confirming a high probability of wrongdoing and who can almost be said to have

actually known the critical facts."  *Global-Tech*, 563 U.S. at 769.  As the *Nonend* court found,

"Motorola's policy of asking its employees to ignore patents and patent applications does not per-

se constitute 'willful blindness.'  The Court finds that more must be alleged to show a policy of

ignoring patents caused an alleged infringer's actions to 'surpass recklessness and negligence' and

rise to the level of 'willful blindness.'"  2016 WL 1253740, at *3 (quoting *Global-Tech*, 563 U.S.

at 769).  AP, however, alleges nothing more than technology companies purportedly not reviewing

patents in general.  That is insufficient as a matter of law.

## IV.    THE COMPLAINT FAILS TO STATE A WILLFUL INFRINGEMENT CLAIM.

Huawei's motion made three simple points regarding AP's allegations of willful

infringement: (1) The complaint does not allege pre-suit knowledge of any of the patents except

for the Mody '458 patent.  (2) There is no factual support for AP's conclusory allegations that

merely regurgitate the willfulness standard (*see* Compl. ¶¶ 114, 115).  And (3) AP's allegation

regarding Huawei's alleged policy of blinding itself to patents generally is both unsupported and implausible, and thus cannot support a claim of pre-suit knowledge.  Mot. at 18-19.[5]

AP's argument for willful infringement rehashes the rest of its opposition, claiming that AP's boilerplate allegations are enough to support its claim of willfulness.  But just like AP's direct and indirect infringement allegations, the willfulness allegations are too conclusory to be entitled to the presumption of truth under *Iqbal/Twombly*.  AP's complaint does not contain any allegations of particular actions taken by Huawei that could constitute willful infringement.

Accordingly, AP's willful infringement claims fail as to pre-suit conduct for precisely the same reason as its indirect infringement claims fail.  And AP "has not sought a preliminary injunction [and therefore] cannot take advantage of the limited exception allowing plaintiffs to recover for solely post-filing conduct." *Opticurrent, LLC v. Power Integrations, Inc.*, No. 2:16-CV-325-JRG, 2016 WL 9275395, at *2 (E.D. Tex. Oct. 19, 2016).  Moreover, all of AP's willful infringement claims fail because of the defects in its underlying infringement claims.

## CONCLUSION

For all of these reasons, the complaint should be dismissed.

---

[5] AP's own difficulty in articulating a cogent theory of infringement only confirms that Defendants could not have been in deliberate disregard of AP's patent rights or objectively reckless as to the risk of infringing valid patents.

Dated: January 29, 2019                              /s/ Scott W. Breedlove

                                                     E. Leon Carter
                                                     Texas Bar No. 03914300
                                                     lcarter@carterarnett.com
                                                     Scott W. Breedlove
                                                     Texas Bar No. 00790361
                                                     sbreedlove@carterarnett.com
                                                     Laura Maninger
                                                     Texas Bar No. 24106425
                                                     lmaninger@carterarnett.com
                                                     CARTER ARNETT, PLLC
                                                     8150 N. Central Expressway, Suite 500
                                                     Dallas, Texas 75206
                                                     Telephone No.: (214) 550-8188
                                                     Facsimile No.: (214) 550-8185

                                                     **Attorneys for Defendants HUAWEI
                                                     DEVICE USA, INC., HUAWEI DEVICE
                                                     (SHENZHEN) CO., LTD., AND HUAWEI
                                                     DEVICE CO., LTD.**