# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| AMERICAN PATENTS LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>HUAWEI DEVICE USA, INC., HUAWEI DEVICE (DONGGUAN) CO., LTD., and HUAWEI DEVICE CO., LTD.,<br><br>    Defendants. | CIVIL ACTION NO. 4:18-cv-672-ALM<br><br><br><br>**JURY TRIAL DEMANDED** |

**AMERICAN PATENTS' SUR-REPLY TO HUAWEI'S MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

## I.     INTRODUCTION

Huawei's reply reveals its deep misunderstanding of what it means to *plead* factual allegations sufficient to state a plausible claim for relief, on the one hand, versus meeting an evidentiary burden to *prove* entitlement to relief, on the other. Huawei repeatedly attacks American Patents' "proof" on admissibility and sufficiency grounds. But this Rule 12(b)(6) motion is the wrong way to demand that American Patents produce admissible evidence sufficient to prove its claims. If Huawei believes that American Patents cannot ultimately sustain its burden, the right time to make that challenge is at summary judgment—after the parties have had the opportunity to gather and exchange discovery.

Huawei also continues to push for a standard of pleading that far surpasses what is required under Rule 8. But American Patents need not disclose the minute details of its infringement case in its complaint. And Huawei cannot credibly assert that it lacks notice of the claims against it.

Finally, Huawei makes much ado about the fact that American Patents has included similar wording in complaints asserting the same patents against other defendants. But it is hardly earthshattering to see complaints use similar language when they assert the same patents against companies selling competing products. And Huawei still fails to provide any support or explanation as to how allegations against other defendants in other complaints have anything to do with the plausibility of the factual allegations against Huawei.

## II.    THE COMPLAINT STATES A CLAIM FOR DIRECT INFRINGEMENT

### A.     The Complaint Properly Alleges That Huawei's Accused Products Infringe the '655 and '090 Patents

Huawei conceded in its opening brief that it is on notice of the products alleged to infringe—which include the Huawei Mate family of products. Mtn. at 4; *see also* Reply at 1-2.

1

Huawei, nevertheless, continues to present a grab bag of arguments about why the complaint's direct infringement allegations should be dismissed.

Huawei first repeats its mischaracterization of the complaint as only alleging infringement by selling, adding that Huawei "cannot directly infringe the Maria patents as alleged because it does not sell devices with the components depicted in the complaint." Reply at 1. But Huawei's factual denials are irrelevant on a Rule 12(b)(6) motion. And, in any event, selling is not the only act of infringement alleged. *See* Opp'n at 7-8.

Despite Huawei's arguments, this case is markedly different from the situation in *Chapterhouse, LLC v. Shopify, Inc.*, No. 2:18-cv-00300-JRG, 2018 WL 6981828 (E.D. Tex. Dec. 11, 2018). In that case, the complaint alleged that the accused product required a third-party app "operated by the user" to be "integrated" with the Defendant's separate system in order to directly infringe. *See* No. 2:18-cv-00300-JRG, Dkt. 1, complaint at ¶¶ 44-45 (E.D. Tex. July 20, 2018) ("The Shopify System is operable to transmit the electronic receipt to a computing device operated by the user. *See, e.g.*, Spently."). Because the *Chapterhouse* complaint relied on a third-party app that was alleged to be operated by a nonparty user, but did not allege that the defendant owned or controlled that app, the Court held that the complaint did not allege that a single entity performed every limitation of the asserted claim. *Id.* at *4.

That is not what is happening here. Rather, American Patents has alleged infringement of the '655 and '090 patents by Huawei in connection with the accused Huawei Mate products. Accordingly, *Chapterhouse* is inapposite.

**B.     The Complaint Properly Alleges "Using" as a Basis for Direct Infringement**

Next, Huawei asserts that American Patents is "pivot[ing]" to assert that Huawei directly infringes by using the accused products. Reply at 3. This is an odd accusation. The complaint has

2

not changed since it was filed, and it has always alleged direct infringement on the basis of Huawei's use of the accused products. *See, e.g.*, Dkt. 1 at ¶¶ 57, 59, 69, 71.

In reality, it is Huawei that now tries to pivot. In its opening brief, Huawei seemed to concede that "the use of Huawei's devices could in some circumstances infringe the Maria patents' method claims[.]" Mot. at 6. Now forced to acknowledge that infringement by "use" is alleged, Huawei changes tack and argues for the first time that the "use" allegations are insufficiently detailed. Reply at 3. Although this new argument has been waived for being made for the first time on reply, it also lacks merit for at least two reasons.

First, Huawei seeks to impose a standard far beyond what is required by Rule 8. Huawei shows its hand when it complains that "there are *no* factual allegations regarding Huawei's purported use—no who, what, where, when or how." Reply at 3. The level of detail Huawei demands more closely aligns with the standard for pleading with particularity under Rule 9. *See, e.g.*, *In re NE 40 Partners, Ltd. P'ship*, 440 B.R. 124, 128 (Bankr. S.D. Tex. 2010) ("Put simply, Rule 9(b) requires the 'who, what, when, where, and how' to be laid out.'" (quoting *Benchmark Elecs. V. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)).

Second, the complaint *does* contain the factual allegations that Huawei claims are lacking: (1) the "who" is Huawei, *see* Dkt. 1 at ¶¶ 2-8, 57, 59, 69, 71; (2) the "what" is the accused products, *see* Dkt. 1 at ¶¶ 57, 69; (3) the "where" is the United States, *see* Dkt. 1 at ¶ 6; (4) the "when" is prior to filing and ongoing into the present, *see* Dkt. 1 at ¶¶ 57-58, 69-70; and (5) the "how" is by using (as well as making, having made, importing, providing, supplying, distributing, selling, or offering for sale) the accused products and/or systems to infringe, *see* Dkt. 1 at ¶¶ 57-59, 69-71. These allegations state a plausible claim that Huawei is liable for direct patent infringement.

As the opposition explained, the complaint's "use" allegations sufficiently alleged infringement of the exemplary method claims. Opp'n at 7 (citing *CreAgri, Inc. v. Pinnaclife, Inc.*, 5:11-CV-06635-LHK, 2013 WL 11569 (N.D. Cal. 2013)). Huawei tries to distinguish *CreAgri* because that case predated Form 18's elimination. Reply at 3-4. But *CreAgri*'s relevant portion did not rely on Form 18 at all. 2013 WL 11569, at *2 (citing *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1318 (Fed. Cir. 2009).

Nor is Huawei's case aided by its citation of *Round Rock Research, LLC v. Oracle Corp.*, 4:11-CV-332-RC-ALM, 2011 WL 11761563 (E.D. Tex. Oct. 25, 2011). *See* Reply at 2. That opinion confirms that "[t]he allegation that [defendant] 'uses' the infringing system is sufficient to allege infringement of a method claim." 2011 WL 11761563, at *4. Likewise, the complaint here alleged infringement of exemplary method claims through Huawei's "use" of accused products. *See* Opp'n at 7-8. And although *Round Rock Research* dismissed other alleged acts of infringement beyond "use," it did so just for those patents that "contain[ed] only method claims." 2011 WL 11761563, at *2.

### C. The Complaint Properly Alleges "Selling" as a Basis for Direct Infringement

The complaint also properly alleges that Huawei directly infringes the '655 and '090 patents by selling the accused Mate smartphones. Huawei claims that because the complaint only included exemplary method claims with respect to the Maria patents, that any acts of infringement relevant to other non-method claims should be dismissed. *See* Reply at 2, 4. This argument is premised on the idea that allegations based on claims not expressly listed in the complaint are somehow dropped from the case. *See* Reply at 4. That is not the law. *See, e.g., Atwater Partners of Texas LLC v. AT&T, Inc.*, No. 2:10–cv–175–TJW, 2011 WL 1004880, *3 (E.D. Tex. 2011) (denying motion to dismiss infringement claims and rejecting the accused infringer's contention that the patentee had to identify in the complaint every accused product

and each individual claim of the patent being asserted, the court noting that such information would be given in the infringement contentions); *Orion Energy Systems Inc. v. Energy Bank Inc.*, 2017 WL 4773301, *1-*3 (E.D. Wis. 2017) (rejecting accused infringer's contention that because, in its complaint, the patentee only pleaded facts of infringement of one claim for each asserted patent, the patentee should be limited to only asserting those pled claims in the litigation, and collecting cases).

Huawei also argues that it does not infringe the '655 and '090 patents' apparatus claims. *See* Reply at 4 n.3.  But this motion is not the proper avenue for Huawei to argue the technical merits of its defenses.  Because the '655 and '090 patents contain apparatus claims, and American Patents asserts infringement of these patents, it is proper at the pleading stage for American Patents to include alternative allegations that Huawei directly infringes those patents by selling the accused products.

      **D.**      **American Patents Need Not Provide Infringement Contentions at the Pleading Stage**

Huawei continues to assert that the complaint must lay out American Patents' infringement case on a detailed, element-by-element basis. *See, e.g.*, Reply at 4. This Court has rejected prior attempts to impose such an exacting standard. *See, e.g., Solocron Educ., LLC*, 2016 WL 9137458, at *2.  This is particularly so given that Huawei will receive the detailed disclosure it seeks via court-ordered infringement contentions within weeks. *See id.* at *3; *see also* P.R. 3-1.

Huawei argues that *Disc Disease Solutions Inc. v. VGH Solutions, Inc.*, 888 F.3d 1256 (Fed. Cir. 2018), contains some new "implied guidance" that a more stringent pleading standard applies in cases involving "complicated technology." Reply at 5 n.4. But *Disc Disease* says

5

nothing about different levels of allegations applying to different types of technology.[1]  And, if anything, courts have read *Disc Disease* to provide guidance in the opposite direction. As the District of Delaware explained while discussing *Disc Disease* in a case involving complex technology, "[i]t seems apparent to me that the [Federal Circuit] Court's view generally is that very little is required to plead a claim of patent infringement."  *KOM Software Inc. v. NetApp, Inc.*, No. 1:18-cv-160-RGA, 2018 WL 6167978, at *1 (D. Del. Nov. 26, 2018).

### III. THE COMPLAINT STATES A CLAIM FOR INDIRECT INFRINGEMENT

#### A. The Complaint Sufficiently Pleads Direct Infringement Underlying Its Indirect Infringement Claims

Huawei reiterates its flawed argument that a complaint's indirect infringement allegations stand or fall on its direct infringement allegations. *See* Reply at 6.  But for the direct infringement underlying a claim of indirect infringement, it is sufficient to allege that "customers . . . directly infringe the [asserted patent] by using, importing, marketing, selling, or offering for sale the accused products." *Cywee Grp. Ltd. v. Huawei Device Co. Ltd.*, No. 2:17-cv-495-WCB, 2018 WL 3819392, at *3 (E.D. Tex. Aug. 10, 2018) (Bryson, J., by designation) (internal quotes omitted). Indeed, to state a claim of induced infringement, a complaint need not even "plead facts establishing that each element of an asserted claim is met[.]" *Id.* (quoting *In re Bill of Lading*, 681 F.3d at 1335).

---

[1] It is also wise to bear in mind that "complexity" is in the eye of the beholder. *See KOM Software Inc. v. NetApp, Inc.*, No. 1:18-cv-160-RGA, 2018 WL 6167978, at *2 (D. Del. Nov. 26, 2018) ("Generally-speaking, to a tech company, a tech patent is going to be simple, or at least understandable, even if [the Court] do[es] not understand a word of it. Thus, what would be incomprehensible to [the Court] is still going to give 'fair notice' to the company that makes the product, and to most companies that import, sell, or use the product.") (finding that complaint stated a claim for direct infringement and denying motion to dismiss). Here, Huawei's own briefing—which presents a number of technical noninfringement arguments—makes abundantly clear that Huawei is on notice of and understands the claims against it.

American Patents' complaint easily meets this standard. It has identified "the end-users, Huawei's customers" as direct infringers who infringe "by using the accused products." Dkt. 1 at ¶¶ 110, 112. It also alleges that Huawei has induced its "affiliates, or third-party manufacturers, shippers, distributors, retailers, or other persons acting on its or its affiliates' behalf, to directly infringe . . . by importing, selling or offering to sell the accused products." *Id.* ¶ 111.[2]

### B. The Complaint Sufficiently Pleads Active Inducement

Huawei's reply concerning active inducement is puzzling. *See* Reply at 6-7. First, it identifies a specific factual allegation included in the complaint—*i.e.*, that Huawei induces infringement by "distributing instructions that guide users to use the products in an infringing manner." Reply at 7; *see also* Dkt. 1 at ¶ 110. But in its very next sentence, Huawei complains that there is "no factual support for that conclusory infringement allegation." *Id.* Given that this *is* a factual allegation, Huawei appears to be confusing the need for factual allegations with the concept of evidentiary support.[3] This underlies its misguided attempt to distinguish *Cywee Group Ltd.*, 2018 WL 3819392. That case does not stand—and Huawei provides no other support—for the proposition that an inducement claimant must attach copies of user manuals (*i.e.*, evidence) to survive a motion to dismiss. Nor does Huawei attempt to reconcile its position

---

[2] Huawei's argument is particularly flawed here given that much of its challenge rests on a theory that the direct infringement allegations involve hardware that Huawei claims not to sell or use. Even if that were relevant on a motion to dismiss (it is not), Huawei's denials about its own direct infringement say nothing about what hardware Huawei's customers might use, in combination with Huawei products or otherwise, to directly infringe.

[3] Huawei also purports to attack the use of screenshots in American Patents' direct infringement allegations on the ground that "[t]hose materials cannot establish that *Huawei* took active steps to induce infringement." Reply at 7. This is, in essence, an evidentiary objection on grounds of relevance. But screenshots included in a complaint are not included to meet a burden or to "establish" anything at this stage. And, even if they were, the screenshots in the direct infringement section are not included to "establish" Huawei's liability for inducement, which is pleaded in a separate section of the complaint and clearly references *Huawei's* user manuals.

with the Court's decision in *Script Security* upholding inducement claims similar to those here, in a complaint that included no such attachments. *See* Opp'n at 12 (discussing both cases).

    C.  **The Complaint Sufficiently Pleads Contributory Infringement**

Huawei concedes, as it must, that the complaint identifies specific features that are used in a manner that infringes the patents-in-suit. *See* Reply at 7-8. That argument failing, Huawei now introduces a new assertion: that "the only features relating to 'initiation and/or control of Internet streamed content' referenced in the complaint" are not features of Huawei's accused products. Reply at 8. But the complaint alleges that the *accused products*, which include Huawei's Mate family of smartphones, possess special features. *See* Opp'n at 10-11. On this motion, that allegation must be taken as true—despite Huawei's denials.

    D.  **The Complaint Sufficiently Pleads Willful Blindness**

Here, Huawei repeats its argument that the allegations of pre-suit willful blindness by it are implausible, dismissing the litany of cited publications saying otherwise as "unsworn opinion writings." (Reply at 8). But Huawei forgets how we got here. A core part of Huawei's attack on the willfulness allegations had nothing to do with an argument that they were conclusory in the relevant sense: i.e., purely a restatement of the legal elements. Rather, Huawei called these factual allegations "far-fetched" and a "fabricated conspiracy." Mtn. at 2, 17. So, appropriately, American Patents' opposition showed publication after publication confirming that Huawei's alleged behavior was endemic to the tech industry—something "virtually everyone does." Ex. 1 [Lemley article] at 21-22; Opp'n at 11 & n. 5 (collecting articles). Huawei's reply is not to rebut the truth of the articles, but to protest that they are improper evidence.

American Patents cited those publications because the true thrust of Huawei's initial attack was not under Rule 12(b)(6). Huawei argued, rather, that plaintiff's willfulness allegations were entirely made up, without any real-world foundation. But as those publications

8

show, American Patents has very good reason to believe that Huawei—as a large tech company—has a policy or practice of not reviewing others' patents, including taking the affirmative act of instructing its employees to not review others' patents. (Not just, as Huawei suggests, a "mere dislike of patents generally." Reply at 9.)

American Patents obviously has not had an opportunity to review Huawei's internal company policies or depose any of its employees. Indeed, it is unclear how American Patents could ethically acquire the evidence Huawei seems to demand at this stage in the proceedings. If, after discovery, American Patents is unable to prove these allegations, then Huawei will have the opportunity to move for summary judgment on this issue.

But based on the information currently available, American Patents easily has a good-faith belief that discovery will likely reveal this allegation to have evidentiary support. Opp'n. at 11; *see also* Rule 11(b)(3) (authorizing pleading on information and belief if allegations "will likely have evidentiary support after reasonable opportunity for further investigation or discovery"); *Script Security Solns. L.L.C. v. Amazon.com, Inc.*, 170 F. Supp. 3d 928, 938 (E.D. Tex. 2016) (Bryson, J., by designation) (finding that similar allegations sufficiently pleaded willful blindness for inducement claim). No more is needed at this point.

Huawei complains, though, that if the willful blindness case against it stands, then "any claim of indirect infringement (or willfulness) against a technology company would survive *Iqbal/Twombly* review." (Reply at 9.) But the point of that line of cases is to ensure that claims are plausible, not to screen out otherwise plausible claims based on notorious, industry-wide activity. Huawei seems to think that, since it is widely accepted in the industry that virtually all major tech manufacturers have a policy of being willfully blind to patents, it is somehow unfair that these companies could all be subject to an allegation of willful blindness. In other words, because virtually everyone does it, nobody can be held accountable. Huawei neither provides

support for this "strength in numbers" theory, nor gives any reason why this Court should categorically exempt large tech companies like it from allegations of willful blindness.

## IV. THE COMPLAINT STATES A CLAIM FOR WILLFULNESS

As explained in the opposition and further above, the complaint adequately alleges both pre-suit knowledge and willful infringement. Yet Huawei says that the complaint "does not contain any allegations of particular actions taken by Huawei." Reply at 10. But Huawei does not deny that the complaint alleges that it actively instructs its employees not to read patents as a matter of policy, that it was thus willfully blind to the existence of the asserted patents before the suit was filed, and that it continues to infringe despite its knowledge of the asserted patents—including by encouraging its customers to infringe.

But Huawei does offer an entirely new argument: that American Patents cannot recover for post-suit conduct because it has not sought a preliminary injunction. Reply at 10 (citing *Opticurrent, LLC v. Power Integrations, Inc.*, No. 2:16-cv-325-JRG, 2016 WL 9275395 (E.D. Tex. Oct. 19, 2016)). Because it was raised for the first time on reply, this argument is waived. And, even if the point had not been waived, *Opticurrent* is not good law here after the Federal Circuit's decision in *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275 (Fed. Cir. 2017). There, the Circuit reversed a district court ruling that the patentee "could not assert willful infringement because it did not seek a preliminary injunction," explaining that "there is no rigid rule that a patentee must seek a preliminary injunction in order to seek enhanced damages." *Id.* at 1295-96 (internal quotes omitted); *see also Apple Inc. v. Samsung Elecs. Co., Ltd.*, 258 F. Supp. 3d 1013, 1026 (N.D. Cal. 2017) ("The *Mentor Graphics* court noted that after the United States Supreme Court's decision in *Halo*, rigid rules surrounding the award of enhanced damages are inappropriate."). So even if American Patents had only alleged willfulness based on post-filing conduct, its allegations would still be allowed to stand.

## V. CONCLUSION

As explained in American Patents' opposition and further above, the Court should deny the motion to dismiss.

Dated: February 12, 2019

Respectfully submitted,

/s/ *Larry D. Thompson, Jr.*
Matthew J. Antonelli
Texas Bar No. 24068432
matt@ahtlawfirm.com
Zachariah S. Harrington
Texas Bar No. 24057886
zac@ahtlawfirm.com
Larry D. Thompson, Jr.
Texas Bar No. 24051428
larry@ahtlawfirm.com
Christopher Ryan Pinckney
Texas Bar No. 24067819
ryan@ahtlawfirm.com
Michael D. Ellis
Texas Bar No. 24081586
michael@ahtlawfirm.com

ANTONELLI, HARRINGTON
& THOMPSON LLP
4306 Yoakum Blvd., Ste. 450
Houston, TX 77006
(713) 581-3000

Stafford Davis
State Bar No. 24054605
sdavis@stafforddavisfirm.com
Catherine Bartles
Texas Bar No. 24104849
cbartles@stafforddavisfirm.com
THE STAFFORD DAVIS FIRM, PC
The People's Petroleum Building
102 N College Ave., 13th Floor
Tyler, Texas 75702
(903) 593-7000

*Attorneys for American Patents LLC*